IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC HOSEY-BEY, #193503, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-959-WHA |
| | ) | |
| SGT. ALTHEA WILLIAMS,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Eric Hosey-Bey ("Hosey-Bey"), an indigent state inmate incarcerated at the Ventress Correctional Facility ("Ventress").  Hosey-Bey identifies himself as a member of the Moorish Science Temple of America ("MSTA").  In the complaint, Hosey-Bey alleges that:  (1) On October 14, 2012, the defendant deprived him of his First Amendment right to practice his religion because she "ordered that the Sunday school service of the Moorish Science Temple of America be closed down after only 10 to 13 minutes of class [because] she was short of officers[.]"; and (2) The defendant discriminated against him in violation of his right to equal protection because later in the same evening she allowed the Christians to hold their service.  *Complaint - Doc. No. 1* at 3.  Hosey-Bey seeks a declaratory judgment, injunctive relief and

---

[1]The defendant is now known as Althea Townsend.

monetary damages for the alleged violations of his constitutional rights.  *Id*. at 4; *Amendment to the Complaint - Doc. No. 13* at 1-2.      The defendant filed an answer, special report and supporting evidentiary materials addressing Hosey-Bey's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat the special report filed by the defendant as a motion for summary judgment.  *Order of May 31, 2013 - Doc. No. 17*.  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the report, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendant has met her evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the

substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

3

motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or declarations under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).   This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Peebles v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).   A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendant's properly supported motion for summary judgment, Hosey-Bey is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of*

4

*Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendant); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof

5

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

(citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.

7

After such review, the court finds that Hosey-Bey has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Suit Against the Defendant in Her Official Capacity - Absolute Immunity

To the extent Hosey-Bey seeks to sue the defendant in her official capacity, she is immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendant is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from her in her official capacity.  *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are

8

protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity).

The court will henceforth address the claims presented against the defendant in her individual capacity.

### B.  Relevant Facts

On October 14, 2012, defendant Williams ordered the Sunday school service of the MSTA closed prior to the conclusion of the service.  *Complaint - Doc. No. 1* at 3; *Affidavit in Support of Complaint (Affidavit of Eric Hosey-Bey) - Doc. No. 1-1* at 1 ("Around 5:55 p.m., Sgt. Althea William[s] called on the radio to an officer Pullom that we had to cancell (sic) our Sunday school because she had no officer to place in the chapel."); *Affidavit in Support of Complaint (Affidavit of Michael Morris-Bey) - Doc. No. 1-1* at 3 ("On the day Oct-14-12 while we were having Sunday school that just begun around 5:58 pm Sgt. Althea Williams called on the radio to an officer Pullom that we had to cancel our Sunday school because she had no officer to place there[.]"); *Affidavit in Support of Complaint (Affidavit of Eric Moore-Bey) - Doc. No. 1-1* at 2 (same); *Affidavit in Support of Complaint (Affidavit of Cardell Craig-El) - Doc. No. 1-1* at 4 (same).[3]  Defendant Williams took such action

---

[3]Despite the repeated statements set forth in the affidavits filed in support of the complaint averring that defendant Williams "called [officer Pullom] on the radio" and ordered him to close the chapel, Hosey-Bey in his sworn response avers that Williams "step[ped] inside the door" of the chapel and ordered Pullom to cancel the service. *Plaintiff's Response - Doc. No. 20* at 2.  In the sworn declaration of Michael Morris-Bey filed by Hosey-Bey in support of this response, inmate Morris-Bey contradicts his prior affidavit and states that "our meeting [began late] only to be

because when notified by the officer on duty in the chapel that his shift had ended and he needed relief "we did not have an officer to relieve him at that time." *Defendant's Exhibit A (Affidavit of Althea Townsend) - Doc. No. 16-1* at 2; *Defendant's Exhibit B (Affidavit of David Pullom) - Doc. No. 16-2* at 2 ("On October 14, 2012, I, Officer David Pullom, Day B Officer was assigned to handle the Chapel Service.  At 6:00 p.m. which was the end of my shift, I notified Night B Shift Supervisor, Sgt. Althea Townsend that I needed a relief from the Chapel.  Sgt. Townsend informed me that she did not have an officer to relieve me and to secure the Chapel and send the inmates back to their assigned dormitory.").  Defendant Williams further asserts that she decided to close the chapel because in her opinion it was "in the best interest of the facility in regards to security." *Id*.  As is clear from the affidavits filed in support of the complaint, Hosey-Bey concedes that the reason offered by defendant Williams at the time of this action was a lack of sufficient officers to secure all areas of the facility.  *Complaint - Doc. No. 1* at 3.  At approximately 7:30 p.m. when an officer became available to provide security for the chapel, the chapel was re-opened for services.  The

---

cancelled 10-minutes later . . . when Sgt. Althea Williams peeped inside" and ordered officer Pullom to cancel the service.  *Declaration in Support of Response - Doc. No. 20-1* at 1.  Hosey-Bey presents no explanation for the discrepancies of the affidavits filed in support of his complaint and the statements contained in his sworn response and the supporting sworn declaration, all of which were made under penalty of perjury before a notary public.  This court may therefore disregard Hosey-Bey's response and the supporting affidavit of inmate Morris-Bey filed solely for the purpose of opposing summary judgment to the extent these documents directly contradict the affidavits filed in support of the complaint.  *Van T. Junkins and Associates v. U. S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also McCormick v. Ft. Lauderdale*, 333 F.3d 1234,1240 n.7 (11th Cir. 2003) (contradictory affidavit submitted solely to defeat summary judgment may be disregarded by the court).  Moreover, in light of the direct contradiction of statements contained in the affidavits of the plaintiff and inmate Morris-Bey submitted with the complaint and those presented in his response and the supporting declaration of inmate Morris-Bey, it appears that Hosey-Bey has submitted perjured documents to this court.  Due to the determination that the defendant is entitled to summary judgment, the court will not impose any additional sanction against the plaintiff.

10

service scheduled at the time of re-opening was a Christian service.

### C.  The First Amendment Claim[4]

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)].  As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807.  Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  Correctional officials are, therefore, "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546 (1979).

"In the First Amendment context, . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), quoting *Pell*, 417 U.S. at 822.  In accordance

---

[4]The plaintiff frames his complaint as raising only constitutional claims; however, the court has considered whether his claims should also be considered under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et. seq. ("RLUIPA").  The plaintiff complains about only a single incident in which a religious service was interrupted due to security concerns based on the lack of a correctional officer.  This single incident is insufficient to rise to the level of a substantial burden on the plaintiff's exercise of religion.  And, even if it did rise to that level, the immediate institutional need for order and safety would prevail here.  *See Cutter v. Wilkinson,* 544 U.S. 709 (2005).

with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Id*., at 822.   Thus, while inmates retain a constitutional right protected by the First Amendment to freely exercise their sincerely held religious beliefs, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 345 (1987); *Turner,* 482 U.S. 78; *Lawson v. Singletary*, 85 F.3d 502, 521 (11th Cir. 1996).  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823; *Bell,* 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is, therefore, clear that preservation of security and order within a prison is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, *Lawson*, 85 F.3d at 512; *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

In a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a

sincerely held religious belief. *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989);

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *see also Overton v. Bazzetta*, 539

U.S. 126, 132 (2003). The burden must be substantial and significantly interfere with an

inmate's practice or free exercise of his religious beliefs. *Hernandez*, 490 U.S. at 699. A

policy is "valid if it is reasonably related to legitimate penological interests." *Turner v.*

*Safley*, 482 U.S. 78, 89 (1987); *O'Lone*, 482 U.S. at 349. "[S]uch a standard is necessary if

'prison administrators . . ., and not the courts [are] to make the difficult judgments

concerning institutional operations.'" *Turner*, 482 U.S. at 89 (quoting *Jones v. North*

*Carolina Prisoners' Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539 (1977)). Consequently,

the defendant does not have the burden of proving the validity of an administrative action or

security decision; rather, the burden is on the plaintiff to disprove it. *Id*. at 89-91.

 In determining whether the actions of a correctional official improperly infringe on

a prisoner's constitutional rights, the factors to be considered include: (1) whether there is

a valid, rational relationship between the challenged action and the legitimate government

interest it serves; (2) whether there are alternative means of exercising the right available to

the inmates; (3) the impact accommodation of the asserted right will have on jail staff and

other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the

regulation. *Turner*, 482 U.S. at 89-91; *Beard*, 548 U.S. at 529, 126 S.Ct. at 2578. However,

a "court is not required to weigh evenly, or even consider explicitly, each of the four *Turner*

factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Freeman v. Texas*

*Department of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004) (interpreting the decision in *Turner* as stating that a court need not weigh evenly or even consider each of the factors as rationality is the controlling standard).

Hosey-Bey complains that defendant Williams deprived him of his right to practice his religion by closing the chapel on October 14, 2015 prior to the conclusion of the MSTA service. In his responses, Hosey-Bey argues that defendant Williams could have abandoned her post to provide security to the chapel or ordered Sgt. Hooks to provide the necessary security. However, this assertion does not in any way undermine the defendant's position that, in her professional opinion, to maintain proper security of the facility the chapel should be closed until an officer without other duties could be assigned to that area.[5] Defendant Williams asserts that as soon as an officer became available to provide security for the chapel the chapel was re-opened for services. *Defendants' Exhibit A (Affidavit of Althea Townsend) - Doc. No. 16-1* at 2 ("At approximately 7:00 p.m., the kitchen officer secured the kitchen and was [then] able to assist with other [security] details. The kitchen officer did not have to return to the kitchen until 10 p.m. or 12 a.m., therefore, the officer who was assigned to the kitchen conducted Church for the 7:30 p.m. service."); *Defendants' Exhibit C (Affidavit*

---

[5]In his supplemental response, Hosey-Bey advises that Sgt. Williams was the acting shift commander due to the absence of Lt. Thomas which indicates that the staff was at least one officer short at the time the chapel was closed. Moreover, it is clear from the documents filed by Hosey-Bey that Sgt. Williams undertook the duties of Lt. Thomas thereby impacting her ability to perform her normal duties. Finally, the documents filed by Hosey-Bey in support of his responses establish that Sgt. Hooks was responsible for clearing the institutional count during the relevant period of time. *Plaintiff's Exhibit B - Doc. No. 36-2* at 2.

*of Aellis Howard) - Doc. No. 16-3* at 2 ("On October 14, 2012, I, Officer Aellis Howard was assigned to the kitchen [for the night shift].  At approximately 7:30 p.m., I secured the kitchen and was advised by Sgt. Althea Williams to conduct church call in the Chapel.").[6]

Closing the chapel when there is a shortage of officers to secure all areas of the prison is reasonably related to the legitimate and compelling penological interest of maintaining the security and orderly running of the institution.  *Lawson*, 85 F.3d at 521 ("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."); *Bell,* 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners[.]").  Moreover, cancellation of a portion of the MSTA service on October 14, 2012 due to the lack of an officer to secure the chapel did not substantially burden or significantly interfere with Hosey-Bey's ability to engage in the free exercise or practice of his religion.  Hosey-Bey has therefore failed to establish a violation of his First Amendment rights.  Consequently,

---

[6]In his response, Hosey-Bey takes issue with the time defendant Williams asserts that an officer became available to provide security for the chapel.  Specifically, he argues that the defendant presented false sworn statements on this issue as the Shift Log indicates that chow call was completed at 5:20 p.m. *Plaintiff's Exhibit B - Doc. No. 36-2* at 1.  However, the affidavits of the defendant and officer Howard do not address when chow call was completed; rather, the affidavits address when officer Howard had completed his duties with respect to securing the kitchen.  Thus, Hosey-Bey's allegations of perjury are not supported by the record.

15

summary judgment is due to be granted in favor of the defendant on this claim.[7]

### D.  The Equal Protection Claim

Hosey-Bey asserts that defendant Williams "discriminated against" him as a member of the MSTA by cancelling the MSTA service on October 14, 2012 while later allowing the Christians to hold their service.  *Complaint - Doc. No. 1* at 3.  This claim, however, provides no basis for relief to Hosey-Bey.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'"  *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate

---

[7]The court notes that Hosey-Bey's religious exercise claim would fail even if pursued under the Religious Land Use and Institutionalized Persons Act of 2000 ["RLUIPA"] as he does not demonstrate a substantial burden on the practice of his religion with respect to the claim presented herein. *Smith v. Allen*, 502 F.3d 1255, 1276-1277 (11th Cir. 2007 (citations omitted) ("To establish a prima facie case under [the applicable] section . . . of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened. . . . A 'substantial burden' [is defined] as being 'significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.' . . .   [T]o constitute a 'substantial burden' on religious practice, the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.'").

16

that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Where a plaintiff challenges an action of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

Since this case is before the court on a properly supported motion for summary judgment submitted by the defendant, Hosey-Bey bears the burden of producing evidence which would be admissible at trial sufficient to show that the defendant provided more favorable treatment to other similarly situated inmates and acted with intentional discrimination in doing so. *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (To preclude summary judgment, plaintiff must present significant probative evidence showing defendant provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *Arlington Heights*, 429 U.S. at 265 (At the summary judgment stage, the plaintiff must produce specific, substantial evidence that the defendant intentionally discriminated against him due to a constitutionally protected interest.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendant in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Assuming for the sake of argument that Hosey-Bey meets the similarly situated

element, his equal protection claim nevertheless fails because no reasonable juror could find, based on this record, that the defendant acted with an improper motive. *McKleskey*, 481 U.S. at 292. The defendant adamantly denies she undertook any adverse action against Hosey-Bey in violation of his equal protection rights and maintains that her only reason for closing the chapel during the MSTA service was to maintain security of the institution. *Defendant' Exhibit A (Affidavit of Althea Townsend) - Doc. No. 16-1* at 2 (The decision to close the chapel during the MSTA service occurred because "I . . . felt [it] was in the best interest of the facility in regards to security.").

Other than Hosey-Bey's contradictory statements referenced herein, *supra* at n.3, and his self-serving, speculative allegations of religious discrimination, the record is devoid of evidence that the defendant acted in an intentionally discriminatory manner. Instead, the evidence before the court establishes that defendant Williams closed the chapel solely because she lacked sufficient staff to provide security for the chapel at the time the MSTA service was being conducted, a situation which had been resolved by the time the Christian service began, i.e., an officer became available to provide security for the chapel. Hosey-Bey has therefore not created a genuine issue that religion or some other constitutionally impermissible factor constituted a motivating factor in the defendant's decision to close the chapel during the MSTA service and re-open the chapel for the Christian service. Thus, the defendant is entitled to summary judgment on Hosey-Bey's equal protection claim.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendant.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before August 13, 2015**, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down

prior to the close of business on September 30, 1981.

Done this 30th day of July, 2015.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE